U.S. EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION, Plaintiff,

v.

PMT CORPORATION, Defendant.

Case No. 14–cv–599 (DSD/TNL).

United States District Court,
D. Minnesota.

Signed Aug. 24, 2015.

Jean P. Kamp, Equal Employment Opportunity Commission, Chicago, IL; and Laurie A. Vasichek and Nicholas J. Pladson, Equal Employment Opportunity Commission, Minneapolis, MN, for Plaintiff.

Anna R. Hickman, Brian T. Benkstein, and David J. Duddleston, Jackson Lewis P.C., Minneapolis, MN; and Paul Patten, Jackson Lewis, P.C., Chicago, IL, for Defendant.

## ORDER

TONY N. LEUNG, United States Magistrate Judge.

This matter comes before the Court on Plaintiff U.S. Equal Employment Opportunity Commission's ("EEOC") Motion to Bifurcate Discovery and Trial (ECF No. 37). Nicholas J. Pladson appeared on behalf of the EEOC at the hearing. David J. Duddleston appeared on behalf of Defendant PMT Corporation ("PMT") at the hearing.

### I.

The EEOC brings this action against PMT under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* (Pl.'s Mem. in Supp. at 2, ECF No. 38; *see* Compl. at 1, ECF No. 1.) The EEOC alleges that PMT engaged in a pattern or practice of discrimination on two grounds: (a) "on the basis of sex by failing to hire females for sales representative positions" and (b) "on the basis of age by failing to hire applicants over the age of 40 for sales representative positions." (Compl. at 1; *accord* Compl. ¶¶ 13, 17.) The EEOC also alleges that PMT failed to make and preserve records in accordance with Title VII and the ADEA. (*See* Compl. at 2; *accord* Compl. ¶¶ 31–33.)

### II.

The instant motion has a somewhat unique procedural history. From the beginning, the parties have not been able to agree on how discovery and trial should proceed in this matter. (*See* Joint Rule 26(f) Report at 2–5, ECF No. 34; Pretrial Scheduling Ord. ¶ 4(h), ECF No. 36.) The parties requested that the Court resolve

their disagreement. (Pretrial Scheduling Ord. ¶ 4(h).) "The Court ... directed both parties to brief the issues, arguments, and case law." (Def.'s Mem. in Opp'n at 2, ECF No. 41.) "[D]istrict courts enjoy broad discretion under Rule 16(b) and in matters of trial management in general." *Schenk v. Chavis,* 259 Fed.Appx. 905, 907 (8th Cir.2008) (per curiam); *accord Schwarz Pharma, Inc. v. Laddock Labs., Inc.,* No. 05–cv–832 (ADM/AJB), 2005 WL 2122597, at *3 (D.Minn. Sept. 1, 2005) ("Courts enjoy broad discretion over scheduling matters."); *see* D. Minn. LR 72.1(a).

## III.

This is a pattern-or-practice case brought pursuant to the EEOC's authority under § 706 of Title VII.[1] (Pl.'s Reply at 2, 2 n. 2, ECF No. 43.) *See United States Equal Emp't Opportunity Comm'n v. PMT Corp.,* 40 F.Supp.3d 1122, 1128–30 (D.Minn.2014). In order to properly contextualize the EEOC's motion, a basic understanding of pattern-or-practice suits is helpful.

Pattern-or-practice cases such as this, which are brought by the EEOC on behalf of a class[2] of individuals, do not proceed under the traditional *McDonnell Douglas* burden-shifting framework. *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 357–61, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) [hereinafter *Teamsters* ]; *Craik v. Minn. State Univ. Bd.,* 731 F.2d 465, 469–70 (8th Cir.1984). "Under Title VII[,] the EEOC, as the plaintiff, has the initial

---

1. The Court recognizes that the EEOC has also brought a pattern-and-practice claim for age discrimination under the ADEA. "Unlike Title VII, the ADEA contains no express reference to pattern-or-practice claims." *Thompson v. Weyerhaeuser Co.,* 582 F.3d 1125, 1127 (10th Cir.2009). Nevertheless, courts have applied the pattern-or-practice framework in ADEA actions. *Id.* at 1128–29 (citing cases); *see Glass v. IDS Fin. Servs., Inc.,* Civ. Nos. 4–89–76, 489–115, 778 F.Supp. 1029, 1058–59 (D.Minn.1991) (Doty, J.); *see also Apsley v. Boeing Co.,* 691 F.3d 1184, 1194 (10th Cir. 2012) ("Under the ADEA, a class of plaintiffs proceeding under a pattern or practice theory must first make a prima facie showing that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." (quotation omitted)); *Aliotta v. Bair,* 614 F.3d 556, 562 (D.C.Cir. 2010) ("Disparate treatment claims brought under the ADEA may involve an isolated incident of discrimination against a single individual or allegations of a pattern or practice of discrimination affecting an entire class of individuals." (quotation omitted)). PMT argues that the pattern-and-practice framework cannot be used in ADEA claims, citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). (Def.'s Mem. in Opp'n at 10; *see* Def.'s Mem. in Opp'n at 11.) The Tenth Circuit explicitly rejected such an argument because *"Gross*

does not involve the pattern-or-practice procedure at issue here." *Thompson,* 582 F.3d at 1131. Matters of trial procedure are for the district judge hearing the case to determine. PMT makes general objections to phased discovery in pattern-and-practice cases. PMT has not raised any ADEA-specific arguments in opposing phased discovery. Accordingly, the Court uses the EEOC's Title VII claim as the vehicle for discussion.

2. The Court "uses the term 'class' or 'class members' as a convenient shorthand to describe, collectively, the aggrieved persons on whose behalf the EEOC seeks victim-specific relief in this case." (Pl.'s Mem. in Supp. at 2 n. 1.) *See Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n,* 446 U.S. 318, 333–34, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) ("We hold, therefore, that the EEOC may maintain its § 706 civil actions for enforcement of Title VII and may seek specific relief for a group of aggrieved individuals without first obtaining class certification pursuant to Federal Rule of Civil Procedure 23."); *David v. Signal Int'l, LLC,* 37 F.Supp.3d 814, 816 n. 6 (E.D.La.2013) [hereinafter *David II* ] ("Although the EEOC brought suit on behalf of a class, the term 'class' or 'class members' is used to collectively described the aggrieved individuals who the EEOC represents and does not implicated Federal Rule Civil Procedure 23.").

burden of making out a prima facie case of discrimination." *Equal Emp't Opportunity Comm'n v. Consolidated Servs. Sys.*, 777 F.Supp. 599, 603 (N.D.Ill.1991), *affirmed*, 989 F.2d 233 (7th Cir.1993). "Pattern[-]or[-]practice claims require the EEOC to 'prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts.'" *Equal Emp't Opportunity Comm'n v. JBS USA, LLC*, Civ. Action No. 10–cv–02103–PAB–KLM, 2011 WL 3471080, at *2 (D.Colo. Aug. 8, 2011) [hereinafter *JBS Colorado* ] (internal quotation marks omitted) (quoting *Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843). "To recover under a pattern[-]or[-]practice theory, discrimination must be 'the company's standard operating procedure[—]the regular rather than the unusual practice." *Id.* (quoting *Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843); *accord Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843 ("The plaintiff in a pattern-or-practice action is the Government, and its initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.").

"Pattern-or-practice cases are typically tried in two or more stages." *JBS Colorado*, 2011 WL 3471080, at *3; *see Craik*, 731 F.2d at 469–70; *Equal Emp't Opportunity Comm'n v. Celadon Trucking Servs., Inc.*, No. 1:12–cv–0275–SEB–TAB, 2013 WL 1701074, at *2 (S.D.Ind. Apr. 18, 2013) ("The order and allocation of proof in a pattern-and-practice case, as well as the overall nature of the trial proceedings, differs from a case involving only individual claims for relief and therefore supports bifurcating trial into two stages." (quotation omitted)); *Equal Emp't Opportunity Comm'n v. Sterling Jewelers Inc.*, 788 F.Supp.2d 83, 86 (W.D.N.Y.2011) ("As a general matter, Supreme Court and Second Circuit caselaw support the use of bifurcation in Title VII actions asserting pattern-or-practice discrimination.").

 "At the initial, 'liability' stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed." *Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843. "The burden then shifts to the employer to defeat the prima facie showing by demonstrating that the Government's proof is either inaccurate or insignificant." *Id.* "If an employer fails to rebut the inference that arises from the Government's prima facie case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy." *Id.* at 361, 97 S.Ct. 1843. "When the Government seeks individual relief for the victims[, as the EEOC does here,] a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief." *Id.; accord Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2561, 180 L.Ed.2d 374 (2011) (describing second phase focusing on individual relief under *Teamsters* ). "During this stage, the EEOC is entitled to a presumption that the adverse employment action suffered by any individual worker was a result of the discriminatory policy. The employer may then rebut this presumption with evidence that the employment decision was made for lawful reasons." *JBS Colorado*, 2011 WL 3471080, at *2 (citing *Teamsters*, 431 U.S. at 362, 97 S.Ct. 1843).

 This is known as the *Teamsters* framework. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 893 (6th Cir.2012); *Equal Emp't Opportunity Comm'n v. Bass Pro Outdoor World, LLC*, 35 F.Supp.3d 836, 859 (S.D.Tex.2014) [hereinafter *Bass* Pro] [3]

---

**3.** *See infra* n. 5.

; *JBS Colorado*, 2011 WL 3471080, at *2 ("The seminal pattern[-]or[-]practice case is [*Teamsters*], in which the Supreme Court laid out the framework for analyzing claims where the government seeks to remedy and employer's systematic practice of discrimination." (citation omitted)); *see also Equal Emp't Opportunity Comm'n v. McDonnell Douglas Corp.*, 960 F.Supp. 203, 204 (E.D.Mo.1996) ("Although *Teamsters* ... never expressly mentions bifurcated trials, courts have generally held that this method of adjudication is appropriate in 'pattern-or-practice' employment discrimination actions."). Under the *Teamsters* framework, "the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination." 431 U.S. at 361, 97 S.Ct. 1843.

"Pattern[-]or[-] practice suits originated with § 707 of Title VII, 42 U.S.C. § 2000e–6." *JBS Colorado*, 2011 WL 3471080, at *2; *see* 42 U.S.C. § 2000e–6(a) (providing for a civil action when "cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter" exists). While § 706 of Title VII does not contain explicit pattern-or-practice language, the Sixth Circuit, the only Court of Appeals to have considered the issue, and district courts in its wake have concluded that the EEOC may bring pattern-or-practice claims pursuant to § 706. *Serrano*, 699 F.3d at 894, 896; *David II*, 37 F.Supp.3d at 820; *Equal Emp't Opportunity Comm'n v. Pitre, Inc.*, 908 F.Supp.2d 1165, 1174 (D.N.M.2012) ("Section 706 does not prevent the EEOC from seeking relief for individuals and the general public under a pattern-or-practice theory."); *see Gen. Tel. Co.*, 446 U.S. at 324, 100 S.Ct. 1698 ("Given the clear purpose of Title VII, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals.").

 The differences between § 706 and § 707 relate to, among other things, the ways in which the suit arrives in federal court and the types of remedies available, including punitive damages. *Serrano*, 699 F.3d at 896; *accord Bass Pro*, 35 F.Supp.3d at 851–55 (discussing differences between § 706 and § 707); *see Pitre*, 908 F.Supp.2d at 1174 (relying on *Serrano* and concluding "[§ ] 706 does not prevent the EEOC from seeking relief for individuals and the general public under a pattern-or-practice theory"). Whether the EEOC proceeds under its authority in § 706 or § 707, however, does not restrict the EEOC's ability to assert a pattern-or-practice claim. *Serrano*, 699 F.3d at 896; *see David II*, 37 F.Supp.3d at 820; *Bass Pro*, 35 F.Supp.3d at 859; *Pitre*, 908 F.Supp.2d at 1174; *cf. PMT Corp.*, 40 F.Supp.3d at 1128–30. *Serrano* concluded that the EEOC may pursue a § 706 pattern-or-practice claim under the *Teamsters* framework and, again in *Serrano's* wake, district courts have employed the same. *Serrano*, 699 F.3d at 896; *David II*, 37 F.Supp.3d at 820; *Bass Pro*, 35 F.Supp.3d at 859; *Pitre*, 908 F.Supp.2d at 1174.[4] Indeed, at least one district court reconsidered its prior ruling that the *Teamsters* framework was not applicable to such claims following the Sixth Circuit's deci-

---

4. Shortly after *Serrano* was decided, a district judge in Nebraska referred to a magistrate judge's decision "that the *Teamsters* method of proof is applicable only when Section 707 claims are presented and not when Section 706 claims are at issue." *Equal Emp't Oppor-* *tunity Comm'n v. JBS USA, LLC*, No. 8:10CV318, 2012 WL 5906537, at *2 (D.Neb. Nov. 26, 2012). That particular issue, however, was not before the district judge. *See id.*; *see also Bass Pro*, 35 F.Supp.3d at 859.

sion in *Serrano. Bass Pro*, 35 F.Supp.3d at 838–59.[5]

## IV.

Significantly, in this case, the EEOC has stated that, should PMT prevail on pattern-or-practice liability, i.e., the EEOC fails to establish that PMT engaged in a pattern or practice of sex and/or age discrimination, this case is over. (Pl.'s Mem. in Supp. at 38 ("The EEOC has advised PMT that, in exercise of its prosecutorial discretion, it will not seek individual relief for victims absent a ... finding of pattern-or-practice liability.").) The question is whether phased discovery will help promote "the just, speedy, and inexpensive determination of [this] action." Fed. R.Civ.P. 1.

### A. Bifurcation of Trial

The EEOC requests that this Court bifurcate this matter into two phases. (Pl.'s Mem. in Supp. at 3.) *See* Fed.R.Civ.P. 42(b). Under the EEOC's proposal, the first phase would be heard by a single jury and address the following:

(1) whether PMT is liable for a pattern or practice of sex discrimination;

(2) whether PMT is liable for punitive damages under Title VII;

(3) whether PMT is liable for a pattern or practice of age discrimination;

(4) whether PMT is liable for liquidated damages under the ADEA;

(5) whether PMT is liable for record-keeping violations; and

(6) PMT's defense as to each of these issues.

(Pl.'s Mem. in Supp. at 3.) The EEOC asserts that the second phase "will occur only if there is a finding of liability against

PMT regarding one or both of the EEOC's pattern-or-practice claims." (Pl.'s Mem. in Supp. at 3.) The second phase

will be heard by a different jury or juries and will address the approximately one hundred or more individual class members' claims for relief, including:

(1) whether PMT can meet its burden of proof as to each class member;

(2) the remedies to which that class member is entitled; and

(3) PMT's defenses, such as failure to mitigate damages on these individual claims.

(Pl.'s Mem. in Supp. at 3.) PMT responds that "[t]he Court, however, need not decide whether the trial should be bifurcated years before trial is even set to occur," noting that "[d]iscovery and motion practice may change the size, nature and scope of this case dramatically." (Def.'s Mem. in Opp'n at 4; *see* Def.'s Mem. in Opp'n at 7.)

While pattern-and-practice cases follow the *Teamsters* framework, this Court will not—and need not—determine precisely which issues will be tried in which phase or how many phases are appropriate in this case in order to resolve the current dispute over how discovery should proceed in this matter. Fundamentally, the *Teamsters* framework consists of two phases, the second of which varies at the district judge's discretion. The first phase addresses class-wide issues; the second phase addresses individual issues.

Courts are divided, however, on whether certain issues, particularly the issue of punitive damages, can be determined on a class-wide basis in the first phase and the concomitant constitutional implications. *See Pitre*, 908 F.Supp.2d at 1177 ("Courts that have considered whether punitive damages should be addressed during

---

**5.** The *Bass Pro* court subsequently granted the defendants leave to file on an interlocutory appeal on this issue. *Equal Emp't Opportuni-* *ty Comm'n v. Bass Pro Outdoor World, LLC*, Civil Action No. 4:11–CV–3425, 2014 WL 6453606, at *4 (S.D.Tex. Nov. 17, 2014).

Phase I or Phase II have taken different approaches." (describing approaches)); *Sterling Jewelers Inc.*, 788 F.Supp.2d at 90 ("[S]everal courts and commentators have declined to adopt the 'punitives first' bifurcation procedure proposed by the EEOC."); *compare, e.g., Pitre,* 908 F.Supp.2d at 1178 (splitting eligibility for punitive damages and amount of punitive damages to be awarded into first and second phases respectively); *Equal Emp't Opportunity Comm'n v. Outback Steak House of Fla., Inc.,* 576 F.Supp.2d 1202, 1206–07 (D.Colo.2008) (same), *with Equal Emp't Opportunity Comm'n v. Performance Food Grp., Inc.,* 16 F.Supp.3d 576, 579–83 (D.Md.2014) (punitive damages to be determined in second phase); *David v. Signal Int'l, LLC,* Civ. Action Nos. 08–1220, 12–557, 2013 WL 4446833, at *2 (E.D.La. Aug. 19, 2013) [hereinafter *David I* ] (same), *order clarified, David II,* 37 F.Supp.3d 814; *Celadon Trucking Servs.,* 2013 WL 1701074, at *3 (same); *Sterling Jewelers Inc.,* 788 F.Supp.2d at 92 (same). The EEOC itself acknowledges that courts are not in agreement. (Pl.'s Mem. in Supp. at 8.) These matters more appropriately addressed to the district court judge who will actually try this case. Therefore, the Court will deny the EEOC's motion without prejudice to the extent the EEOC requests that this Court delineate which issues will be tried under which phase of the *Teamsters* framework.

## B. Phased Discovery

▉ As stated above, the *Teamsters* framework focuses first on class-wide issues, then on individual issues. Under the *Teamsters* framework, the key question in the class-wide phase is "whether the employed engaged in a pattern or practice of discrimination," i.e., "whether unlawful dis-

crimination was the employer's regular procedure or policy." *McDonnell Douglas Corp.,* 960 F.Supp. at 205.

Courts have routinely phased discovery in correlation with the *Teamsters* phases. *Compare Performance Food Grp.,* 16 F.Supp.3d at 579, 583 (ordering phased discovery where parties agreed in principle discovery should be phased but not on which issues); *David I,* 2013 WL 4446833, at *2–3 (ordering phased discovery); *Celadon Trucking Servs.,* 2013 WL 1701074 at *2 (same); *JBS Colorado,* 2011 WL 3471080, at *8–9 (same); *Sterling Jewelers Inc.,* 788 F.Supp.2d at 85–86, 88, 92 (ordering phased discovery in accordance with parties' agreement except punitive damages to be addressed in second phase); *Equal Emp't Opportunity Comm'n v. Nebco Evans Distrib., Inc.,* No. 8:CV96–00644, 1997 WL 416423, at *2–3 (D.Neb. June 9, 1997) (ordering phased discovery), *with Equal Emp't Opportunity Comm'n v. New Indianapolis Hotels, LLC,* No. 1:10–cv–1234–WTL–DKL, 2012 WL 364052, at *1–2 (S.D.Ind. Feb. 1, 2012) (bifurcating trial but not discovery); *Equal Emp't Opportunity Comm'n v. Ruby Tuesday, Inc.,* No. 2:09cv1330 (Mem. Ord. at 2) (W.D.Pa. Dec. 27, 2011) (equities "weigh in favor of completing all discovery before undertaking the task of adjudicating the parties' dispute to final resolution") (Ex. B to Decl. of Brian T. Benkstein, ECF No. 42–2); *see Equal Emp't Opportunity Comm'n v. Kaplan Higher Ed. Corp.,* No. 1:10 CV 2882, 2012 WL 1358500, at *5, 5 n. 2 (N.D.Ohio Apr. 18, 2012) (referring to previously ordered phased discovery); *see also Equal Emp't Opportunity Comm'n v. JBS USA, LLC,* 940 F.Supp.2d 949, 953 (D.Neb.2013) [hereinafter *JBS Nebraska* ] (referring to parties' agreement to bifurcate discovery and trial).[6]

6. The Court agrees with PMT that the supplemental authority recently submitted by the EEOC (a memorandum and order from the

United States District Court for the Southern District of Texas in the *Bass Pro* case) is not particularly persuasive on the issue of phased

Phased discovery, therefore, appears to be a natural correlation to the *Teamsters* framework, focusing first on issues that are germane to the class as a whole and then, if necessary, focusing on individual circumstances. *See Celadon Trucking Servs.*, 2013 WL 1701074, at *1. With this in mind, the Court turns to PMT's arguments against phased discovery, namely, that the circumstances of the individual class members are relevant to its defenses in the first phase and phased discovery is less efficient.

### 1. Individuals' Relevance to Pattern- or-Practice Liability

■ The EEOC argues that phased discovery is standard in pattern-and-practice cases and individual class-member discovery is "largely irrelevant and unnecessary to establish or defeat a pattern-or-practice liability claim." (Pl.'s Mem. in Supp. at 11–12, 15.) The EEOC asserts that it intends to present statistical evidence of gross disparities in the hiring rates for (a) men and women in the sales representative position, and (b) applicants under and over 40 years old. (Pl.'s Mem. in Supp. at 16; *see* Pl.'s Mem. in Supp. at 1617 ("[T]he fact that particular individuals applied and were not hired can be established more efficiently from PMT's own applicant flow data and business records.").) The EEOC also intends to "present anecdotal evidence reflecting PMT's discriminatory hiring practices, including testimonial evidence from former PMT personnel who were responsible for carrying out these policies." (Pl.'s Mem. in Supp. at 16.) The EEOC asserts that "few individual class members possess any relevant information beyond the simple fact that they (1) applied and (2) were not hired." (Pl.'s Mem. in Supp. at 16.)

PMT responds that un-phased discovery "will provide essential information to the parties, and to the Court, as to the true size of the class," and "will put the Court in a better position to assess" whether bifurcation of trial should occur. (Def.'s Mem. in Opp'n at 12; *see* Def.'s Mem. in Opp'n at 4.) PMT contends that, with phased discovery, "[t]he EEOC will have unfettered access to the pool of alleged victims and it will have no obligation to identify those victims until *after* a finding of liability," consequently PMT will not be able to respond to the EEOC's anecdotal evidence with anecdotal evidence of its own. (Def.'s Mem. in Opp'n at 13; *see* Def.'s Mem. in Opp'n at 19.) PMT contends that, under the phased discovery proposed by the EEOC, "discovery will be limited to EEOC-favorable evidence," consisting of "testimony from a highly biased, disgruntled" employee and "one[-]dimensional ... statistical information." (Def.'s Mem. in Opp'n at 13–14; *see* Def.'s Mem. in Opp'n at 5–6, 16, 21.) PMT contends that "discovery of the actual circumstances of a given applicant, his or her age, gender, qualifications, work experience or other factors applied in the hiring process .... is essential to [its] defense to liability." (Def.'s Mem. in Opp'n at 2.) PMT contends that "[a]ll of these individualized issues are germane to the question of liability, but if [phased] discovery is permitted the Court would allow the EEOC to conceal this highly relevant information from PMT." (Def.'s Mem. in Opp'n at 22.)

In addition, PMT contends that it "requires full discovery [to] be able to challenge the EEOC's proof of an alleged pattern or practice as inaccurate or incomplete." (Def.'s Mem. in Opp'n at 16.) PMT contends that it "should not be

---

discovery in this case given that the court expressly notes that this is "an appropriate case management plan during the pendency of the interlocutory appeal that has been

filed." (Ex. A to Ltr. to Mag. Judge, July 23, 2015, ECF No. 57–1; *see* Ltr. to Mag. Judge, Aug. 7, 2015.) *See supra* n. 5.

forced to rely exclusively on the EEOC's headcount of the aggrieved applicant pool with no ability to test the veracity of that data," (Def.'s Mem. in Opp'n at 16), stating that individual circumstances "may bear on the accuracy of the EEOC's expert's statistical analysis," (Def.'s Mem. in Opp'n at 2; *see* Def.'s Mem. in Opp'n at 16–17, 18). PMT contends that it "maintains legitimate job-related hiring criteria that lawfully excludes candidates who are not qualified or who are not likely to be successful at PMT." (Def.'s Mem. in Opp'n at 17.) Further, PMT contends that individual "discovery will also enable PMT to establish basic demographic information such as age and gender, which are undisputedly central issues in this case," and is not likely to be determinable from an applicant's resume. (Def.'s Mem. in Opp'n at 18–19, 19 n. 12.)

▪ "[T]he initial focus in a pattern-or-practice case is not on individual employment decisions but on a pattern of discriminatory decisionmaking." *United States v. City of New York*, 631 F.Supp.2d 419, 425 (S.D.N.Y.2009) (quotation omitted); *accord Equal Emp't Opportunity Comm'n v. Dial Corp.*, 156 F.Supp.2d 926, 946 (N.D.Ill. 2001) ("[P]attern-or-practice liability does not turn upon the particularized experience of the individual claimant." (quotation omitted)); *see* Angela D. Morrison, *Duke-ing Out Pattern or Practice After Wal–Mart: The EEOC As Fist*, 63 Am. U.L.Rev. 87, 152 (2013) ("Because the EEOC is able to bring suit in its own name and does not stand in the shoes of individual litigants, its pattern or practice suit does not rely on the merits of individual claims.").

Typically, two kinds of circumstantial evidence are used to establish the existence of a policy or practice of discrimination: "statistical evidence aimed at establishing the defendant's past treatment of the protected group, and (2) testimony from protected class members detailing specific instances of discrimination." *City of New York,* 631 F.Supp.2d at 425 (quotation omitted); *accord Teamsters*, 431 U.S. at 337–340, 97 S.Ct. 1843 (discussing government's use of statistical evidence "bolstered" by testimony regarding specific instances of discrimination); *Morgan v. United Parcel Serv. of Am., Inc.*, 380 F.3d 459, 463 (8th Cir.2004) ("statistical evidence of disparities" typically offered in pattern-or-practice cases); *Craik*, 731 F.2d at 470 ("Normally, the plaintiff will produce statistical evidence showing disparities between similarly situated protected and unprotected employees with respect to hiring, job assignments, promotions, and salary, supplemented with other evidence, such as testimony about specific incidents of discrimination."); *see Monaco v. City of Jacksonville*, 51 F.Supp.3d 1251, 1259 (M.D.Fla.2014) ("a plaintiff may establish a pattern[-]or[-]practice claim through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally" (quotation omitted)); *Consolidated Servs. Sys.*, 777 F.Supp. at 603 ("A plaintiff's prima facie case in a pattern-or-practice claim usually consists of statistical evidence demonstrating substantial disparities in the application of employment actions as to minorities and the unprotected group, buttressed by evidence of general policies or specific instances of discrimination."). "Accordingly, it is unnecessary to conduct liability discovery on the entire class ... because a pattern-or-practice suit is not based on individual hiring decisions but on a pattern or practice of discrimination." *Celadon Trucking*, 2013 WL 1701074, at *3.

"The defendant, in rebuttal, will attempt to show that the plaintiff's 'proof is either inaccurate or insignificant.'" *Craik*, 731 F.2d at 470 (quoting *Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843). This evidence in-

cludes the defendant's own statistical evidence, anecdotal evidence, illustrative decisions, "and any other evidence that bears on the issue of whether a pattern of discrimination existed." *McDonnell Douglas Corp.*, 960 F.Supp. at 205; *see Teamsters*, 431 U.S. at 360 n. 46, 97 S.Ct. 1843 ("The employer's defense must, of course, be designed to meet the prima facie case of the Government. We do not meet to suggest that there are any particular limits on the type of evidence an employer may use."). Thus, as the EEOC points out,

> PMT can, for example, challenge the government's statistical evidence by showing that during the period it is alleged to have pursued a discriminatory policy it made too few employment decisions to justify the inference that it had engaged in a regular pattern of discrimination. It may challenge the government's statistics based on a small sample size or that the population of eligible applicants do not accurately reflect the pool of qualified job applicants. PMT can present witnesses that contradict or undermine the witnesses presented by the EEOC. Of course, PMT is free to call women and individuals over the age of 40 whom it did hire as sales representatives, as well as managers who will say they never discriminated against anyone on the basis of age or sex.

(Pl.'s Mem. in Supp. at 19 (quotations and citations omitted); *accord* Pl.'s Reply at 6.) Similarly, "[i]f PMT wants to rebut the EEOC's statistical evidence by naming 10, or 20 or 100 rejected applicants from its hiring records it claims were lawfully rejected, it can do so." (Pl.'s Reply at 6.)

Except as may be set forth in the Federal Rules of Civil Procedure, a phased discovery approach places no limitations on PMT's ability to obtain discovery relevant to its defenses as to the existence of a pattern or practice of discrimination or any other class-wide issue. The EEOC will still be required to disclose individuals likely to have discoverable information and who will serve as witnesses. *See* Fed. R.Civ.P. 26(a)(1)(i), (3). Moreover, as discussed below, there is support for PMT's argument that it may obtain targeted discovery regarding individual class members during the first phase. And, "[t]o the extent PMT believes the EEOC presently maintains a list of every single class member and all of their relevant information," the EEOC has confirmed that no such list exists. (Pl.'s Reply at 6.)

PMT also has its own records, including employment application and personnel records from the relevant time, *see Nebco Evans Distrib.*, 1997 WL 416423, at *3 (defendant could use employment applications to "rebut validity of any statistical evidence proffered by the plaintiff"), although the Court recognizes that these records may be somewhat incomplete given "PMT's alleged failure to keep records of applications, as required by federal regulation," *PMT Corp.*, 40 F.Supp.3d at 1130 n. 4; *see, e.g., Equal Emp't Opportunity Comm'n v. Paramount Staffing, Inc.*, No. 02:06–cv–2624–JPM–dkv, 2010 WL 2521034, at *6–13 (W.D.Tenn. May 17, 2010) (discussing use of statistical data where applicant flow data was unavailable in pattern-or-practice case based on racial discrimination). In addition, "the evidence relied upon by the EEOC's expert in forming its opinions will be disclosed consistent with all applicable requirements of this Court and the Federal Rules of Civil Procedure." (Pl.'s Reply at 10.) *See* Fed. R.Civ.P. 26(a)(2).

Moreover, the Sixth Circuit explicitly rejected the argument advanced by PMT that "allowing the EEOC to pursue the pattern-or-practice method for § 706 claims will allow the EEOC to 'have its cake and eat it too' because the *Teamsters* framework provides a more generous standard of proof." *Serrano*, 699 F.3d at 896.

"The *Teamsters* framework is not an inherently easier standard of proof; it is simply a different standard of proof. Indeed, under *Teamsters*, the plaintiff's initial burden to make out a prima facie case is heightened," *Id.* "[U]nder *Teamsters* [,] the plaintiff must demonstrate the existence of a discriminatory procedure or policy. This is no simple task, as the plaintiff must prove that discrimination was the company's standard operating procedure— the regular rather than the unusual practice." *Id.* (quotation and citation omitted). "It is only because this initial requirement is more arduous that after the showing is made it is assumed 'that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy.'" *Id.* (quoting *Teamsters*, 431 U.S. at 362, 97 S.Ct. 1843).

The Court is not persuaded that phased discovery permits the EEOC to hide the ball as to the evidence it will use to make out its prima facie pattern-or-practice case. *See Doe v. Young,* 664 F.3d 727, 734 (8th Cir.2011) ("One of the purposes of discovery is to eliminate unfair surprise."); *Bredemus v. Int'l Paper Co.,* No. 06–cv–1274 (PJS/RLE), 252 F.R.D. 529, 533 (D.Minn. 2008) ("The overriding purpose of the federal discovery rules is to promote full disclosure of all facts to aid in the fair, prompt and inexpensive disposition of lawsuits." (quotation omitted)).

### 2. Efficiencies

The EEOC also asserts that deferring individual discovery until after liability has been determined will yield cost savings to both parties and time savings to the parties and the Court regardless of whether PMT is found to have engaged in a pattern or practice of discrimination. (Pl.'s Mem. in Supp. at 13.) As stated above, if the EEOC is not able to establish that PMT engaged in a pattern or practice of discrimination, this case is over, and the par-

ties need not engage in "time-consuming, extensive and expensive class member discovery." (Pl.'s Mem. in Supp. at 13; *see* Pl.'s Mem. in Supp. at 20.) If the EEOC succeeds on only one of its pattern-or-practice claims, i.e., sex or age discrimination, or it is determined that the relevant time period is shorter than pleaded, the applicable class for individual discovery would be significantly reduced. (Pl.'s Mem. in Supp. at 13–14; *see* Pl.'s Mem. in Supp. at 21.) Accordingly, the EEOC asserts that "[i]t makes sense ... to defer extensive and expensive class member discovery until the ... jury can determine the scope of any provable pattern or practice." (Pl.'s Mem. in Supp. at 14.) And, should the EEOC prove that PMT engaged in a pattern or practice of discrimination as pleaded in the Complaint, such a finding increases the chances of settlement. (Pl.'s Mem. in Supp. at 14–15; *see* Def.'s Mem. in Opp'n at 4 ("To be sure, it is extremely rare for a pattern or practice lawsuit to proceed to judgment.").)

Conversely, PMT contends that phased "discovery may be more costly and less efficient" due to the size of the potential class, which the EEOC estimates to contain around 75 to 150 members. (Def.'s Mem. in Opp'n at 22; Pl.'s Mem. in Supp. at 2 n. 1; *see* Def.'s Mem. in Opp'n at 3–4.) PMT also contends that phased discovery and bifurcation has resulted in drawn-out proceedings. (Def.'s Mem. in Opp'n at 4–5.)

The Court finds PMT's efficiency arguments similarly unavailing. The *Teamsters* framework is generally applied in pattern-or-practice cases, not just pattern-and-practice cases with a large potential class. Courts have concluded that phased discovery is appropriate with classes of the size estimated in this case. *See, e.g., Celadon Trucking Servs.,* 2013 WL 1701074, at *2 (class contained over 160 members);

*Nebco Evans Distrib.*, 1997 WL 416423, at *1 (class contained "well over one hundred (100) individuals, possibly as high as 150 to 200 individuals"); *but see New Indianapolis Hotels*, 2012 WL 364052, at *2 n. 2 (no phased discovery with class of more than 100 members). Given the narrowed focus of the first phase on class-wide issues, engaging in discovery with respect to each potential class member is inefficient and unnecessary.[7] *See Nebco Evans Distrib.*, 1997 WL 416423, at *2–3. This is especially true considering the EEOC's representation that this matter will not be pursued if the EEOC is not able to establish that PMT engaged in a pattern or practice of discrimination.

## C. Deadline for Identification of Victims of Discrimination

■ Lastly, PMT requests that "the EEOC ... be required to identify the alleged victims of discrimination by a date certain early on in this litigation." (Def.'s Mem. in Opp'n at 17.) PMT asserts that it "does not seek to limit class members in order to narrow its potential liability," rather it "needs this information to fully develop its defense and to *assess* potential liability." (Def.'s Mem. in Opp'n at 17.) "The EEOC opposes any class[-]member identification deadline prior to a liability finding...." (Pl.'s Mem. in Supp. at 21.) The EEOC requests that "the Court ... defer class member identification until the second phase of this case, where such evidence is relevant and consistent with the procedural and legal framework of pattern-or-practice cases." (Pl.'s Mem. in Supp. at 21.) The parties each significantly gloss two distinct issues: identification and the timing thereof.

First, "when the EEOC pursues a pattern or practice claim, it 'does not stand in the employee's shoes.'" *PMT Corp.*, 40 F.Supp.3d at 1129 (quoting *Equal Emp't Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 297, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002)); *see Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843 ("Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy" at liability stage). In such cases, "the EEOC acts to 'advance the public interest in preventing and remedying employment discrimination.'" *PMT Corp.*, 40 F.Supp.3d at 1129 (quoting *Gen. Tel. Co.*, 446 U.S. at 331, 100 S.Ct. 1698). And, as previously held in this case, the EEOC was not required to identify the individual victims in order to *state* a pattern-and-practice claim against PMT. *Id.* at 1129–30 (emphasis added). Nevertheless, as PMT points out, some courts have required the EEOC to identify victims of alleged discrimination in response to target discovery requests. (Def.'s Mem. in Opp'n at 17–18.) *See, e.g., Equal Emp't Opportunity Comm'n v. Presrite Corp.*, No. 11 CV 260, 2012 WL 4434055, at *13–15 (N.D.Ohio Sept. 24, 2012); *Kaplan Higher Educ. Corp.*, 2012 WL 1358500, at *5; *Equal Emp't Opportunity Comm'n v. Sterling Jewelers Inc.*, No. 08–CV–00706(A)(M), 2010 WL 2803017, at *4 (W.D.N.Y. July 15, 2010); *Serrano v. Cintas Corp.*, Civil Action No. 04–40132, 2010 WL 746430, at *1 (E.D.Mich. Mar. 2, 2010); *see also Equal Emp't Opportunity Comm'n v. Cintas Corp.*, No. 04–40132 (Ord. at 3–4) (E.D.Mich. Mar. 16, 2015) (Ex. A to Mar. 20, 2015 Ltr., ECF No. 54). Notably, these discovery requests were seeking the *identity* of victims, not to im-

---

7. The Court notes that in *Kaplan Higher Education,* a case cited by PMT, the parties agreed that individuals who were deposed during the first phase could also be questioned on the issue of damages. 2012 WL 1358500, at *5 n. 2. Employing such an agreement here might also increase efficiency as well.

pose a *deadline* by which such victims had to be identified.

This brings the Court to the second point. The establishment of a deadline for identification of class members before the pattern or practice has been found to exist appears to "get[ ] the pattern-or-practice framework exactly backwards." (Pl.'s Mem. in Supp. at 22.) Certainly, as the EEOC itself recognizes, there must be a deadline for class-member identification and discovery at some point. (Pl.'s Reply at 8.) But it does not make sense to set such a deadline before the scope of the relevant pattern or practice is determined. Similarly, the establishment of such a deadline at this juncture appears inconsistent with the alleged ongoing nature of the purported discrimination at issue. (*See* Pl.'s Reply at 8.) *See PMT Corp.*, 40 F.Supp.3d at 1129 ("Here, if the EEOC can ultimately prove a pattern or practice of discrimination existed, such a claim would be a continuing violation, even though the discriminatory acts at issue are otherwise discrete acts." (footnote omitted)). Therefore, the Court will not establish a deadline by which the EEOC is to identify individual victims of the alleged discrimination at this juncture of the case.

In sum, the Court concludes that phased discovery is consistent with the *Teamsters* framework and the typical approach employed in pattern-or-practices cases. Phased discovery increases efficiency in this case by focusing the parties' efforts first on whether PMT engaged in a pattern or practice of discrimination and issues pertaining to the class as a whole. If the EEOC is not able to establish that PMT engaged in a pattern or practice of discrimination, this case is over and the parties will not have wasted time and resources on the more costly and time-intensive discovery on damages that each class member may have suffered. PMT is not prejudiced by phased discovery.

## V.

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The EEOC's Motion to Bifurcate Discovery and Trial (ECF No. 37) is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE.**

2. **Within 14 days from the date of this Order,** the parties shall meet and confer with one another to prepare a joint proposal for the first phase of discovery addressing issues pertaining to the class as a whole.

3. **Within 7 days from the parties' meet-and-confer,** the parties shall submit their proposal for the Phase I Pretrial Scheduling Order to the chambers of the undersigned.

4. All prior consistent orders remain in full force and effect.

5. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.